ELLIS, Judge
(concurring).
I concur in the result reached herein. In my opinion, the Courts of this state have in the past so interpreted Articles 1304, 1305 and 1306 of the Civil Code as to engraft onto them the requirements for acquisitive prescription and certain common law rules relating to prescription between co-owners which are not present in our code. Crayton v. Waters, 146 La. 238, 83 So. 540 (1919); Liles v. Pitts, 145 La. 650, 82 So. 735 (1919); Southeastern Public Service Company v. Barras, 246 So.2d 298 (La.App. 3 Cir. 1971).
I believe these interpretations to be fundamentally erroneous. In my opinion, Article 1305 provides that if either a co-owner or co-heir is permitted to possess a portion of the common property for a period of 30 years, regardless of the state of mind of the parties, a legal presumption arises that it was the intention of the parties that the portion of the common property so possessed is taken by the party possessing as his share of the common estate. It is because of this presumption that the action of partition will no longer lie, since the partition is deemed to have taken place. Under Article 1306, the said party no longer has an interest in the remainder of the common property. See Articles 2284, 2285 and 2287, Civil Code.
Articles 1304 — 1306 are closely related to the boundary articles. See Articles 824, 825, 852, Civil Code. Article 852 has been interpreted in a manner consistent with the above interpretation of Article 1305. See Opdenwyer v. Brown, 155 La. 617, 99 So. 482 (1924); Ratcliff v. Gordon, 268 So.2d 98 (La.App. 1 Cir. 1972).
Finally, the source given in the project of the 1825 Code for Articles 1304 and 1305 reveals that, in Spanish law, it was intended that just such a presumption be created by the passage of time and acquiescence in an informal division of a common estate, whether by one or all of the co-owners or co-heirs. Febrero adicionado, part 2, book 1, Ch. 2, § 1, Nos. 13, 14, and 15, Vol. 4p. 117 et seq. (5th ed. 1807).
Dotsy Williams Price’s testimony is un-rebutted in the record. She testified that her mother, Pachena Williams, moved onto the parcel of land claimed by her in 1919, and resided thereon until her death in 1961. Throughout that period she cultivated to the limits of the parcel surveyed. Mrs. Price also testified that she continued to cultivate the same parcel. The surveyor testified that he surveyed to the corners pointed out to him by Mrs. Price, and that all of the land encompassed by his survey was cultivated land. He further stated that the tract was bounded by unimproved *377 property with trees and bushes on it. No co-heir or co-owner ever interfered with the possession enjoyed by either Mrs. Price or her mother. On the other hand, there is no evidence to indicate that either Mrs. Price or her mother ever overtly expressed an intention to possess adversely to their co-heirs or co-owners. Other heirs possessed or used other parts of the common property from time to time.
In my opinion, a proper interpretation of Articles 1304, 1305 and 1306 would, under the above fact situation, create a presumption of law which would preclude the inclusion of the Price parcel of the property in a partition of the common property, and would also prevent the participation of the heirs of Pachena Williams in a partition of the remainder. Of course, the defense available under Article 1305 would have to be urged by the heirs.
However, .because of the condition of our jurisprudence, I believe the result herein to be correct. Neither Mrs. Price nor her mother have ever placed their co-owners on notice that their possession was adverse, and this is a requirement of the Crayton and Liles cases, supra. I therefore concur in the result.